Services. Mr. Sackett, whenever you're ready. May it please the Court. This morning I'd like to expand upon, but not necessarily repeat, certain arguments set forth in plaintiff's briefs which he believes warrant reversal of the Commissioner's final administrative decision. The first issue being the Administrative Law Judge's determination that Mr. Guillen only needed to use the bathroom three to five times in an eight-hour work shift because of his irritable bowel syndrome. There is no medical basis in the record for the Administrative Law Judge to have concluded that Guillen only needed three to five breaks per work day. This is an unfounded medical assumption on the part of the Administrative Law Judge. But what is the testimony? The testimony, Judge Schroeder, is that over time Mr. Guillen needed to use the bathroom much more frequently than three to five times per work shift. As indicated in the progress notes, over time, the need for him What does over time mean? In other words, the Administrative Law Judge made references to a progress note from 1993 and 1994. In 1993, the treating gastroenterologist said he needed to use the bathroom two times per shift. In 1994, the same gastroenterologist said he needed to use the bathroom three to four times per shift. Mr. Guillen then stopped working until 2001. Consistent with this Court's decision in Stone v. Heckler, a progressive deteriorating disorder such as irritable bowel syndrome compels us to look at the condition most recently. In other words, the most recent medical evidence. And if we look at the spectrum of progress notes from not only Dr. Canale, but from the other people who examined Mr. Guillen, his need to go to the bathroom increased over time. And if the Court would like, I could refer to some references in the record that speak to that. Well, I think a key question is, could the ALJ ignore Gunn's own statements? And what do you say to that? If His Honor could refer me to what particular statements you might be speaking to, I'd be happy to respond. I say the key question is whether the ALJ could ignore Gunn's own testimony. He could not ignore it, sir, no. If he was going to reject it, he would have to give an explanation for that. But he said that the claimant's statements are not entirely credible. But what I think he did, Your Honor, is he basically made this a credibility determination. The first aspect in assessing disability is based on objective medical evidence. In Jones v. Heckler, this Court said disability determinations are not supposed to be turned into credibility determinations. And the judge basically, as I see the record, jumped beyond the notations in the record as far as the severity of the irritable bowel syndrome and simply made it an assessment in his eyes of what he felt was credible. Well, do you have a case saying the ALJ had to give reasons for doubting Gunn? All of this Court's litany of credibility determinations talk about that, yes. But now and then the case to that effect. No, Your Honor, because I basically view this not so much as a credibility case. I view this more as one where the ALJ failed to properly. Well, I know that's what you do. But the way I view it, it's the credibility of Gunn. If he's credible, then his testimony should have been included in the ALJ's question. If he's not, if the ALJ can say he's not credible, then it didn't have to be in the question. And so my question to you is, how far did the ALJ have to go to support his statement that Gunn was not credible? He would have to, I think, evaluate all of his statements, Your Honor, not simply one. And I'm trying to do that. Well, he didn't say specifically, he just said he's not very credible. And that's all he said. I know. Now, have you got a case saying that's not enough? I believe if we're – I haven't cited to it, sir, but I think if we look at Bonnell and Fair, those cases say that we simply all make credibility determinations in a vacuum. The cases also say that we don't isolate. I think you – yes. Well, now these are cases of some interest to me. I don't know if you want to submit them on a sticker or something. I'll be happy to, Your Honor. Here's the question I have. There's some doctor's report, say Dr. Canale's report, that says that Mr. Gann needs to use the bathroom a certain number of times per day. But now, is I – am I correct that that would be the doctor's report of what the patient said to him as opposed to doing an observation of him? I think that's the – at the risk of sounding patronizing, Your Honor, I think that's the critical question. And I'll try to be as responsive as I can. All the recitals, the ones to which you refer and the other physicians, all quote Mr. Gann as saying, I've got to use the bathroom six times a day, eight times a day, ten times a day, 15 to 20 times a day. Clearly, the physicians are not there observing Mr. Gann. Yes, they are repeating his recital. And I think what's most significant about that, Your Honor, is this. None of the physicians who either examined, including the state agency physician, the gastroenterologist at Stanford or Dr. Canale, none of them ever said or intimated, Mr. Gann is telling me that he's got to go to the bathroom X number of times a day. And I find this somewhat inconsistent with what I would expect to see with an individual who suffers from irritable bowel syndrome. There's not one word in the record where any physician challenged his recital. And I think the absence of that is rather significant. I understand that. What I'm wondering is this. Is there any case that we've decided that tells us a standard for when a condition that's reported by the patient to the doctor may be disregarded by the administrative judge? I mean, there are some reasons why we might credit what's said to a doctor, because people normally tell their doctors something is true because they want good medical help. But someone could also exaggerate to a doctor. Clearly, that's possible, Your Honor. And I'm not aware of any reported case by the Ninth Circuit where the Court has said self-reporting in and of itself of something like this, the frequency related to irritable bowel syndrome, is inherently suspect. So I'm not aware of that, sir. No. How about other circuits? Any extra circuit authority that's right on point? I haven't quite, frankly, again, because and I was remiss when I wrote these briefs. In all candor, I should have made this, made a credibility argument. And I did not. I focused on the objective. Oh, you know, the government came up with the Shelton case. It's not a great case, but it does say the ALJ found the self-reporting was exaggerated. And so it was discounted. And, Your Honor, I think That's right in their brief. And I think that would have more credence in this case if the ALJ could cite to any physician's statement saying that they felt Mr. Gein's self-reporting was exaggerated. In this case, it just looks as though the ALJ said that they're exaggerated. The physician doesn't have to say that he's a liar, but do you dispute the fact that he drove a car, that he watched TV for several hours a day, and that he went to church every week? I'm not disputing that. He did these things, Your Honor. And I didn't represent Mr. Gein at the administrative hearing. I am disputing the way the judge summarized his testimony. We understand that. Yes. All right. I think I'm not disputing that at all, no. If you want to save a minute for rebuttal, then I suggest we go to the government. Thank you. Your Honor, it's Jean Turk for the appellate. Plaintiff bears the burden of proving disability. Could you speak into the microphone? Plaintiff bears the burden of proving disability. Plaintiff has been unable to show that he could not perform at a medium level doing unskilled work. Appellant's entire case rests on credibility. And as my colleague admitted, he did not challenge the ALJ nor the district court's finding on credibility. The ALJ's RFC for unskilled medium work is supported by the evidence. And his inclusion of three to five unscheduled breaks during a day gave plaintiff the benefit of the doubt. The V.E. testified that based on that particular RFC, although certain jobs would be eroded, that plaintiff was able to perform a significant number of jobs at the medium and light levels that existed in the national economy. Well, what is our law as to the ALJ finding a claimant not credible? Your Honor, I'm sorry. I just didn't hear the first part. What is our law as to an ALJ finding a claimant not to be credible? I would point to Bunnell and saying that as long as the ALJ... Well, what case? Bunnell? Yeah. Is that in the brief? I believe so, Your Honor. All right. As long as the credibility finding is sufficiently specific to allow a reviewing court to conclude that the adjudicator did not reject claimant's testimony arbitrarily. Well, what is specific about this ALJ's determination? I'm not following your question, sir. What is specific about the ALJ's discounting Gollin's credibility? That the ALJ looked at permissible grounds to... What is specific, I said? His ability to socialize, his ability to go... Is that in the record? It's in the ALJ's decision, Your Honor. And does it bring it to bear on credibility? It is in the credibility paragraph, Your Honor. Amongst other things were normal, physical, normal tests. I think of concern is that when Dr. Connelly, when appellant reported to Dr. Connelly that he now, his bowel movements had increased to 20 per day, Dr. Connelly took no action. Dr. Connelly did not require other testing. He did not... Well, those are arguments, but I'm trying to focus on what the ALJ actually said makes this man not credible. You know the law, which has been well established in the immigration context, is you have to accept the claimant unless you can show in so many specific ways he's not credible. The ALJ cited to lack of medical evidence, the plaintiff's... Well, how would there have been medical evidence how often he went to the bathroom? Exactly, Your Honor. Well, I mean, you either think he's a liar or you accept it, don't you? I mean, what medical evidence could there be as to his trips to the bathroom? That particular issue is as good as the plaintiff's testimony, which was found to be... All right. Now, why do you describe as the ALJ not believe that testimony? The medical evidence speaks against it. The individual with such a severe impairment was not willing to take any treatment. The treatments that would... Well, we don't know whether he could afford it. The treatments that would be involved are as simple as a change in his dietary... Well, he tried a lot of medicines. In fact, they say three different medicines. And one of them was successful early on. Metamucil did have some positive effect, yet Dr. Connelly, hearing that his patient was suffering from repeated bowel problems, still did not take steps to correct that, which I think speaks to Dr. Connelly's belief in his patient's... Well, that was not Dr. Connelly's conclusion. He believed him very much that he's not able to work. Dr. Connelly made the same statement. Almost an identical letter was written in 1995 where he said that the... that appellant could not work because of the frequent... his need for frequent use of the restroom and that he could work if he could find a job that could allow for this. This was in 1995. At that time, claimant was working. He was selling fish from about 1993 to 1999. So therefore, Dr. Connelly's statement back then, which he made in February of 2002, is suspect because he was saying the claimant couldn't work, couldn't find a job that would accommodate his special need, yet claimant was working. So... Well, I'm not... As I understand it, the ALJ did take into consideration and accept the fact that he had to make frequent trips to the bathroom and said that the evidence shows that there are a lot of jobs that he could do to support that and that he thought that the extent to which he said he was unable to work was not entirely credible. Is that the way that you read the ALJ's decision? Yes. And again, I believe that the ALJ then was referencing Dr. Connelly's statement that claimant could not work unless he could use the bathroom at will and he was not able to find such work. Well, a great deal depends on whether he has to go five times a day, which is what the ALJ assumed in his hypothetical, or 20 times a day, which was the claimant's testimony. Now, why doesn't the claimant's testimony stand up? What makes him a liar? Your Honor, it would seem to me that a reasonable person suffering from such an impediment that is creating such havoc in his life would seek treatment for that. That's your reason, then? Yes. And he is able to seek treatment. He said he sees his doctor one to two times a year. Well, now, Dr. Connelly, who comes up with the conclusion he can't work, still doesn't prescribe any treatment. It seems to be untreatable. I don't believe that. You don't believe Dr. Connelly? No, I don't believe that Dr. Connelly said it was untreatable. Oh, he didn't do anything about it. Well.  That is the mystery, Your Honor. In fact, there are so many disconnects in this that I think between the medical evidence, plaintiff's ability to lead a rather normal life despite having his alleged impediment, all rings suspect. And the ALJ, who again is the arbitrator of the credibility, looked at the entire record, had an opportunity to meet face-to-face with the appellate and determined that, you know what, maybe there's some truth here. I'm going to give this guy the benefit of the doubt. And I'm going to say that he does have a problem. He does need to use the facilities frequently. Three to five times in an eight-hour workday would be sufficient, adding on the two breaks and the lunch. Plus, he can go before and after. Another medical curiosity is the fact that he is saying that he needs to use the bathroom 20 bowel movements a day. This is in February of 2002. When Dr. Fields examined plaintiff in October of 2002, plaintiff's weight had actually increased by several pounds. And when plaintiff testified at the hearing the following January, his weight had increased even more. It just doesn't ring true that an individual who is having the severity of this problem, which I have not read, should increase his weight and not decrease his weight. Does the record indicate how long the hearings went on? The ALJ hearing, Your Honor? Yeah. I mean, whether that would be how many breaks they took for the hearing? I believe I recall one break. One break, but I do not know. Period of time. That's, Your Honor, I cannot speak to that. I'm sorry. You say the ALJ gave him a break. He took his statement of 20 bathroom breaks and discounted it 75 percent. Now, that's a very funny way to make a credibility statement. I believe he's telling he's exaggerating by a very large factor, but I'll believe a little bit of it. Is that what the ALJ did? Honest, I don't know. I think the ALJ You see it there. You don't know. You know what he did do. I thought you said he gave him the benefit of the doubt. I believe he gave him the benefit of the doubt. How did he give him the benefit of the doubt if his testimony is 20 and the ALJ says 5? Is that the benefit of the doubt? Because the ALJ looked at his lack of treatment, the minimum of it. No, but I mean on that figure, is that the benefit of the doubt? I believe it was based on Dr. Wood's claims that the claimant was the benefit of the doubt. Answer my question. Yes, Your Honor. It's 5, the benefit of the doubt, when the figure is 20. Yes, Your Honor.  That is the benefit of the doubt. And again, plaintiff was saying 20 bowel movements a day. He his other evidence shows he was up maybe 18 to 20 hours a day. So, you know, if you want to start doing math, maybe one time an hour, certainly the ALJ's finding would be reasonable under that context. Thank you, counsel. Very briefly. Just a few points. The ALJ did not give Mr. Gein the benefit of the doubt. That's simply a pantering to him. As far as his daily activities, this is what actually happened. He maybe prepared one meal a day. He washed dishes maybe three times a week. He mopped the floor maybe twice a week. He did laundry once a week. He went grocery shopping once a week. This was not an act of life. As far as getting medical care, he couldn't get a colonoscopy because he didn't have medical insurance. As Judge Noonan pointed out, limodal made his condition worse. Thank you. Case to start is submitted for decision.
judges: Gould, Rawlinson, Covello